Exhibit A

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request records from January 1, 2008 to the present related to the DOS assistance to the interceptions of communications by certain foreign government agencies, in particular: (1) El Salvador's National Electronic Monitoring Center[1]; (2) "thirteen (13) communications intercept sets . . . donated to [Venezuela's National Anti-Drug Office],"[2]; and (3) a "wiretapping system and associated training" provided to Costa Rica, which "allowed Costa Rican prosecutors to convict seven Sinaloa cartel members in May 2017."[3]

Specifically, the Requesters request the following records[4]:

1.  Records related to the support of El Salvador's National Electronic Monitoring Center, including, but not limited to:
    a.  Descriptions of the types and quantities of equipment provided;
    b.  Summaries of the trainings provided to the units involved in the operation of the Monitoring Center;
    c.  The expenditure of funds supporting the operation of the Monitoring Center since 2010, including, but not limited to, itemized budgets; and
    d.  Any risk assessment regarding the provision of support.

---

[1] Dep't of State, 1 International Narcotics Control Strategy Report 164 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf.
[2] Dep't of State, 2008 End-Use Monitoring Report: South America (2009), https://www.state.gov/j/inl/rls/rpt/eum/2008/137757.htm
[3] Gov't Accountability Off., GAO-18-10, Counternarcotics: Overview of U.S. Efforts in the Western Hemisphere 56 (2017).
[4] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

2. Records related to the provision of communications intercept sets to Venezuela's National Drug Office, including, but not limited to:
   a. Descriptions of the types and quantities of equipment provided as part of the intercept sets; and
   b. Any risk assessment regarding the supply of equipment.

3. Records related to the provision of wiretapping system and associated training to Costa Rica, including, but not limited to:
   a. An overview of the wiretapping system provided, including, but not limited to, the program summary, expected objectives and outcomes, and associated costs;
   b. Any information regarding the trainings provided, including, but not limited to, the training schedules, which include the start and end dates, the course titles, and the agency providing the training;
   c. Any risk assessment regarding the provision of the wiretapping system;
   d. Any records summarizing who used the wiretapping system;
   e. Any records naming the prime contractor of each wiretapping system, including, but not limited to, contracts with the prime contractor of each wiretapping system.

We urge DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[5]

**Request for a Public Interest Fee Waiver**

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[6]

First, the request concerns "identifiable operations or activities of the federal government."[7] Specifically, the requested records will shed light on the role of DOS officials in providing assistance to foreign governments for wiretapping and other forms of communications interception.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of those operations or activities."[8] U.S. security assistance to foreign governments, especially for

---

[5] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.
[6] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).
[7] 22 C.F.R. § 171.16(a)(1)(i).
[8] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).

the purposes of facilitating the development of their surveillance capabilities, is a matter of great public interest and concern. The requested records will reveal substantial new information about U.S. security assistance, including the types of equipment the government provided to foreign nations to establish wiretapping systems and what factors DOS considered in conducting risk assessments. This information will bring greater public understanding to the U.S. government's surveillance transfer and its related privacy and security implications.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[9] The Requesters each have regularly published the results of their FOIA requests on their respective websites.[10] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of foreign security assistance provided by the U.S. government.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to government surveillance, is a critical and substantial component of PI's work.[11] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[12] as well as original reporting and analysis,[13] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

---

[9] *Id.* § 171.16(a)(1)(iii)–(iv).

[10] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[11] *See, e.g.*, Privacy Int'l, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[12] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[13] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for commercial use.[14] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[15] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[16] policy papers,[17] and frequent blog posts.[18] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then publishes not only the primary released documents but also the resulting original investigative reporting[19] and analysis[20] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

---

[14] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[15] *Id.*

[16] *See, e.g.*, Privacy Int'l, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[17] *See, e.g.*, Privacy Int'l, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[18] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[19] *See, e.g.*, Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[20] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

**Request for Records in Electronic Format**

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[21] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[22]

***

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow              Michael Morisy
General Counsel                    Chief Executive
Privacy International              MuckRock

---

[21] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).
[22] *See id.* § 552(a)(6)(B).

Exhibit B

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request records from January 1, 2008 to the present related to the DOS assistance to foreign governments through the Central America Regional Security Initiative ("CARSI"). In particular, CARSI has supported the investigative capacity of Central American nations through "the establishment of wiretapping centers and the creation of criminal investigative schools."[1]

Specifically, the Requesters request the following records[2]:

1.  An overview of which wiretapping centers have been established under CARSI.

2.  Any records related to the provision of training through CARSI to foreign units, including, but not limited to:
    a.  Training schedules, which include the start and end dates, course titles, and the agency providing the training;
    b.  The titles of all educational materials provided to participants for the training;
    c.  Course descriptions, which provide the information on the objectives and expected outcomes for each course; and
    d.  A list of participating agencies for each course and their country of origin;

3.  Any risk assessments regarding CARSI, both broadly applicable to the program and particularly pertaining to each wiretapping center established under CARSI.

---

[1] Peter J. Meyer, Cong. Research Serv., R41731, Central America Regional Security Initiative: Background and Policy Issues for Congress 20 (2015), https://fas.org/sgp/crs/row/R41731.pdf
[2] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

4.  Any records naming the prime contractor of each wiretapping center, including, but not limited to, contracts with the prime contractor of each wiretapping center

We urge DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[3]

## Request for a Public Interest Fee Waiver

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4]

First, the request concerns "identifiable operations or activities of the federal government."[5] Specifically, the requested records will shed light on CARSI, a U.S. government program to assist security efforts in Central America.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of those operations or activities."[6] U.S. security assistance to foreign governments, especially for the purposes of facilitating the development of their surveillance capabilities, is a matter of great public interest and concern. The requested records will reveal substantial new information about U.S. security assistance, including the types of equipment the government provided to foreign nations to establish wiretapping systems and what factors DOS considered in conducting risk assessments. This information will bring greater public understanding to the U.S. government's surveillance transfer and its related privacy and security implications.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[7] The Requesters each have regularly published the results of their FOIA requests on their respective websites.[8] Consistent with this practice, the Requesters also intend to disseminate any

---

[3] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.
[4] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).
[5] 22 C.F.R. § 171.16(a)(1)(i).
[6] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).
[7] *Id.* § 171.16(a)(1)(iii)–(iv).
[8] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (last accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

information obtained through this request to the public, contributing to the public's enhanced understanding of foreign security assistance provided by the U.S. government.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to government surveillance, is a critical and substantial component of PI's work.[9] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[10] as well as original reporting and analysis,[11] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for commercial use.[12] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[13] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[14]

---

[9] *See, e.g.*, Privacy Int'l, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[10] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[11] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

[12] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[13] *Id.*

[14] *See, e.g.*, Privacy Int'l, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

policy papers,[15] and frequent blog posts.[16] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then publishes not only the primary released documents but also the resulting original investigative reporting[17] and analysis[18] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[19] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[20]

*** 

---

[15] *See, e.g.*, Privacy Int'l, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[16] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[17] *See, e.g.*, Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[18] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

[19] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).

[20] *See id.* § 552(a)(6)(B).

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow                    Michael Morisy
General Counsel                          Chief Executive
Privacy International                     MuckRock

Exhibit C

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request all records from January 1, 2011 to the present concerning the DOS's provision of counter-narcotics and law enforcement trainings to specific foreign governments. The International Narcotics Control Strategy Reports drafted by the DOS Bureau of International Narcotics and Law Enforcement Affairs have revealed specific instances of such trainings: (1) annual International Law Enforcement Academies ("ILEA") in El Salvador and New Mexico,[1] (2) trainings for the National Civil Police in El Salvador on "intelligence-led policing, community relations, and complex investigations,"[2] (3) trainings for the justice sector personnel in El Salvador on "asset forfeiture, advanced investigation, and trial skills,"[3] (4) trainings for the law enforcement agencies in El Salvador on "transparency, efficiency, and institutional respect for human and civil rights,"[4] and (5) trainings for the justice sector in Costa Rica on investigative techniques.[5]

Specifically, the Requesters request the following records[6]:

  1.   Records related to the provision of ILEA trainings in El Salvador and New Mexico, including, but not limited to:

---

[1] Dep't of State, 1 International Narcotics Control Strategy Report 35–37 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf.
[2] *Id.* at 167.
[3] *Id.*
[4] *Id.* at 166.
[5] Dep't of State, 1 International Narcotics Control Strategy Report 182 (Mar. 2012), http://iri.edu.ar/publicaciones_iri/anuario/cd_anuario_2012/Amnor/5.pdf.
[6] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

      a.  Training schedules, which include the start and end dates, the course titles, and the agency providing the training;
      b.  The titles of all educational materials that were provided to the participants for the training;
      c.  Course descriptions, which provide the information on the objectives and expected outcomes for each course; and
      d.  A list of participating agencies for each course and their country of origin.

2.  Records related to the provision of counter-narcotics and law enforcement trainings in El Salvador and Costa Rica, including, but not limited to:
      a.  Training schedules, which include the start and end dates, the course titles, and the agency providing the training;
      b.  The titles of all educational materials that were provided to the participants for the training;
      c.  Course descriptions, which provide the information on the objectives and expected outcomes, for each course given; and
      d.  Any risk assessment regarding the provision of the training.

We urge the DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[7]

**Request for a Public Interest Fee Waiver**

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[8]

First, the request concerns "identifiable operations or activities of the federal government."[9] The request seeks information regarding identifiable training programs provided by the U.S. government, including those mentioned in the DOS's public report. Specifically, the requested records will shed light on the role of the DOS officials in designing and providing trainings to foreign law enforcement personnel on various criminal justice procedures and practices.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of

---

[7] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.
[8] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).
[9] 22 C.F.R. § 171.16(a)(1)(i).

those operations or activities."[10] U.S. security assistance to foreign governments, especially for the purposes of developing their law enforcement capabilities, is a matter of great public interest and concern. The requested records will reveal substantial new information about U.S. security assistance, including the contents and objectives of specific training courses that the U.S. government provided to the foreign officers. The Requesters believe that such information will bring greater transparency to the U.S. government's security assistance and any related implications on civil liberties.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[11] The Requesters have each regularly published the results of their FOIA requests on their respective websites.[12] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of foreign security assistance provided by the U.S. government.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to foreign security assistance, is a critical and substantial component of PI's work.[13] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[14] as well as original reporting and analysis,[15] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

---

[10] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).

[11] *Id.* § 171.16(a)(1)(iii)–(iv).

[12] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[13] *See, e.g.*, Privacy International, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[14] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[15] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for commercial use.[16] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[17] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[18] policy papers,[19] and frequent blog posts.[20] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then analyzes the primary released documents and publishes the resulting original investigative reporting[21] and analysis[22] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the

---

[16] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[17] *Id.*

[18] *See, e.g.*, Privacy International, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[19] *See, e.g.*, Privacy International, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[20] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[21] Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[22] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[23] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[24]

*** 

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School


Submitted on behalf of:

| Caroline Wilson Palow | Michael Morisy |
|---|---|
| General Counsel | Chief Executive |
| Privacy International | MuckRock |

---

[23] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).
[24] *See id.* § 552(a)(6)(B).

Exhibit D

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request all records from January 1, 2012 to the present concerning the DOS's provision of counter-narcotics equipment and trainings to the Haitian government.[1] The U.S. government provides infrastructure, equipment, and trainings for the general development of the Haitian National Police ("HNP").[2] The U.S. government also provides more targeted support of the Bureau for the Fight Against Narcotics Trafficking ("BLTS"), through "provision of communications equipment, vehicles, non-lethal operational gear, and canine unit training."[3] For both agencies, the United States funds joint enforcement operations with the Drug Enforcement Administration ("DEA") and the U.S. Coast Guard ("USCG").[4]

Specifically, the Requesters request the following records[5]:

1.  Records related to the provision of counter-narcotics equipment to HNP and BLTS, including, but not limited to:
    a.  Descriptions of the types and quantities of equipment provided; and
    b.  Any risk assessment regarding the provision of the equipment.

2.  Records related to the provision of counter-narcotics trainings for HNP and BLTS officials, including, but not limited to:

---

[1] Dep't of State, 1 International Narcotics Control Strategy Report 182 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

    a. Training schedules, which include the start and end dates, the course titles, and the agency providing the training;

    b. The titles of all educational materials that were provided to the participants for the training;

    c. Course descriptions, which provide the information on the objectives and expected outcomes of each course; and

    d. Any risk assessment regarding the provision of the trainings.

3. Any records showing which joint enforcement operations between the DEA, USCG, HNP, and BLTS were funded by the United States, including, but not limited to, an itemized budget.

We urge the DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[6]

**Request for a Public Interest Fee Waiver**

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[7]

First, the request concerns "identifiable operations or activities of the federal government."[8] The request seeks information regarding identifiable support programs provided by the U.S. government, including those mentioned in the DOS's public report. Specifically, the requested records will shed light on the specific U.S. programs that have been providing equipment, trainings, and funding to develop foreign counter-narcotics capabilities.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of those operations or activities."[9] U.S. security assistance to foreign governments, especially in relation to counter-narcotics operations in the Caribbean, is a matter of great public interest and concern.[10] The requested records will reveal substantial new information about U.S. security

---

[6] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.

[7] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).

[8] 22 C.F.R. § 171.16(a)(1)(i).

[9] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).

[10] Hearing Before the Senate Caucus on International Narcotics Control, 112th Cong. (2012) (statement of Dianne Feinstein, Co-Chair of the Senate Caucus on International Narcotics Control), https://www.drugcaucus.senate.gov/content/senate-caucus-international-narcotics-control-holds-hearing-caribbean-security.

assistance, including what type of equipment, trainings, or other resources the U.S. government provides in Haiti. The Requesters believe that such information will bring greater transparency to the U.S. government's security assistance and any related privacy and security implications.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[11] The Requesters have each regularly published the results of their FOIA requests on their respective websites.[12] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of U.S. security assistance in Haiti.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to foreign security assistance, is a critical and substantial component of PI's work.[13] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[14] as well as original reporting and analysis,[15] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for

---

[11] 22 C.F.R. § 171.16(a)(1)(iii)–(iv).

[12] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[13] *See, e.g.*, Privacy International, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[14] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[15] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

commercial use.[16] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[17] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[18] policy papers,[19] and frequent blog posts.[20] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then analyzes the primary released documents and publishes the resulting original investigative reporting[21] and analysis[22] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

---

[16] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[17] *Id.*

[18] *See, e.g.*, Privacy International, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[19] *See, e.g.*, Privacy International, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[20] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[21] Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[22] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[23] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[24]

***

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow                    Michael Morisy
General Counsel                          Chief Executive
Privacy International                     MuckRock

---

[23] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).
[24] *See id.* § 552(a)(6)(B).

Exhibit E

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request all records from January 1, 2012 to the present concerning the DOS's provision of law enforcement trainings and equipment to specific governments in the Caribbean.[1] The International Narcotics Control Strategy Report by the DOS Bureau of International Narcotics and Law Enforcement Affairs has revealed specific instances of such trainings: (1) to the Dominican Republic, for drug-detection canine units and "other specialized . . . investigative and reactive units,"[2] (2) to Guyana, to "strengthen[] drug enforcement capabilities,"[3] (3) to Jamaica, "for interdiction of narcotics and firearms trafficking; combatting cyber-crime, money laundering, financial fraud, and other organized crime; improving Jamaica's efforts to seize and forfeit criminally-acquired assets; and enhancing Jamaica's maritime law enforcement capabilities,"[4] and (4) to Suriname, "to prevent and interdict drug trafficking, enhance maritime law enforcement capabilities, combat money laundering, and support at-risk youth programs."[5] Specifically, the Requesters request the following records[6]:

1.  Records related to the provision of law enforcement equipment to Dominican Republic, Guyana, Jamaica, and Suriname, including, but not limited to:
    a.  Descriptions of the types and quantities of equipment provided; and
    b.  Any risk assessment regarding the provision of the equipment.

---

[1] We use the term "Caribbean" consistent with the State Department's definition that includes members of the Caribbean Community (CARICOM) and the Dominican Republic. Dep't of State, U.S. Strategy for Engagement in the Caribbean, https://www.state.gov/p/wha/rt/caribbeanstrategy/#note.
[2] Dep't of State, 1 International Narcotics Control Strategy Report 149 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf.
[3] *Id.* at 178.
[4] *Id.* at 201.
[5] *Id.* at 264
[6] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

2.   Records related to the provision of law enforcement trainings in Dominican Republic, Guyana, Jamaica, and Suriname, including, but not limited to:
   a.   Training schedules, which include the start and end dates, the course titles, and the agency providing the training;
   b.   The titles of all educational materials that were provided to the participants for the training;
   c.   Course descriptions, which provide the information on the objectives and expected outcomes of each course; and
   d.   Any risk assessment regarding the provision of the trainings.

We urge the DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[7]

**Request for a Public Interest Fee Waiver**

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[8]

First, the request concerns "identifiable operations or activities of the federal government."[9] The request seeks information regarding identifiable training programs provided by the U.S. government, including those mentioned in the DOS's public report. Specifically, the requested records will shed light on the specific U.S. programs that have been providing equipment and trainings to develop foreign law enforcement capabilities.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of those operations or activities."[10] U.S. security assistance to foreign governments, especially in relation to counter-narcotics operations in the Caribbean, is a matter of great public interest and concern.[11] The requested records will reveal substantial new information about U.S. security assistance, including what type of equipment, trainings, or other resources the U.S. government

---

[7] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.

[8] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).

[9] 22 C.F.R. § 171.16(a)(1)(i).

[10] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).

[11] Hearing Before the Senate Caucus on International Narcotics Control, 112th Cong. (2012) (statement of Dianne Feinstein, Co-Chair of the Senate Caucus on International Narcotics Control), https://www.drugcaucus.senate.gov/content/senate-caucus-international-narcotics-control-holds-hearing-caribbean-security.

provides in the Caribbean. The Requesters believe that such information will bring greater transparency to the U.S. government's security assistance and any related privacy and security implications.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[12] The Requesters have each regularly published the results of their FOIA requests on their respective websites.[13] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of U.S. security assistance in the Caribbean.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to foreign security assistance, is a critical and substantial component of PI's work.[14] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[15] as well as original reporting and analysis,[16] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for

---

[12] 22 C.F.R. § 171.16(a)(1)(iii)–(iv).

[13] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[14] *See, e.g.*, Privacy International, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[15] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[16] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

commercial use.[17] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[18] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[19] policy papers,[20] and frequent blog posts.[21] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then analyzes the primary released documents and publishes the resulting original investigative reporting[22] and analysis[23] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

---

[17] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[18] *Id.*

[19] *See, e.g.*, Privacy International, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[20] *See, e.g.*, Privacy International, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[21] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[22] Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[23] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[24] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[25]

***

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow                     Michael Morisy
General Counsel                           Chief Executive
Privacy International                      MuckRock

---

[24] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).
[25] *See id.* § 552(a)(6)(B).

Exhibit F

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request records from January 1, 2012 to the present related to the DOS assistance to law enforcement in Central America. In particular, the 2018 International Narcotics Control Strategy Report describes U.S. support (1) to "anti-gang and community policing in El Salvador"[1] and (2) to the border police of Guatemala ("DIPAFRONT").[2]

Specifically, the Requesters request the following records[3]:

1.  Records related to the provision of support to anti-gang and community policing in El Salvador, including, but not limited to:
    a.  Descriptions of the types and quantities of equipment provided;
    b.  Summaries of any training provided;
    c.  Any risk assessments regarding the support of anti-gang and community policing; and
    d.  Any risk assessments regarding the provision of COMPSTAT, a statistical analysis tool that tracks the type and location of crime reports to more efficiently allocate law enforcement resources.

2.  Records related to the provision of support to DIPAFRONT, including, but not limited to:
    a.  Descriptions of the types and quantities of equipment provided;

---

[1] Dep't of State, 1 International Narcotics Control Strategy Report 166 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf
[2] *Id.* at 171.
[3] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

      b.   Summaries of any trainings provided;

      c.   The expenditure of funds provided, including, but not limited to, itemized budgets.

      d.   Any risk assessments regarding support to DIPAFRONT.

We urge DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[4]

## Request for a Public Interest Fee Waiver

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[5]

First, the request concerns "identifiable operations or activities of the federal government."[6] Specifically, the requested records will shed light on DOS programs to provide equipment and trainings to support policing in El Salvador and Guatemala.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of those operations or activities."[7] U.S. security assistance to foreign governments, especially relating to anti-gang policing in Central America, is a matter of great public interest and concern.[8] The requested records will reveal substantial new information about U.S. security assistance, including the types of training provided to foreign law enforcement in Central America and what factors DOS considered in conducting risk assessments. This information will bring greater public understanding to the U.S. government's security assistance in the region.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[9] The Requesters each have regularly published the results of their FOIA requests on their respective

---

[4] See Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.

[5] 5 U.S.C. § 552(a)(4)(A)(iii); 22 C.F.R. § 171.16(a)(1).

[6] 22 C.F.R. § 171.16(a)(1)(i).

[7] *Id.* § 171.16(a)(1)(ii) (internal quotation marks omitted).

[8] *See, e.g.,* Ali Watkins & Meridith Kohut, *Trump and America's Stake in El Salvador's Gang War*, N.Y. Times (Dec. 10, 2018), https://www.nytimes.com/2018/12/10/us/el-salvador-ms-13.html.

[9] 22 C.F.R. § 171.16(a)(1)(iii)–(iv).

websites.[10] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of foreign security assistance provided by the U.S. government.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to government surveillance, is a critical and substantial component of PI's work.[11] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government materials,[12] as well as original reporting and analysis,[13] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for commercial use.[14] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[15] PI conducts research on a variety of issues related to privacy and

---

[10] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[11] *See, e.g.*, Privacy Int'l, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

[12] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[13] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

[14] 5 U.S.C. § 552(a)(4)(A)(ii)(II) ; 22 C.F.R. § 171.14(b)(5)(ii)(C).

[15] *Id.*

surveillance. It then publishes its research in a variety of formats, including research reports,[16] policy papers,[17] and frequent blog posts.[18] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then publishes not only the primary released documents but also the resulting original investigative reporting[19] and analysis[20] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[21] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in

---

[16] *See, e.g.*, Privacy Int'l, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[17] *See, e.g.*, Privacy Int'l, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[18] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

[19] *See, e.g.*, Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[20] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

[21] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).

separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[22]

***

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow             Michael Morisy
General Counsel                   Chief Executive
Privacy International             MuckRock

---

[22] *See id.* § 552(a)(6)(B).

Exhibit G

Office of Information Programs and Services

A/GIS/IPS/RL

Department of State, SA-2

Washington, DC 20522-8100

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

We submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State ("DOS") on behalf of Privacy International ("PI") and MuckRock Foundation ("MuckRock") (collectively, the "Requesters").

**Requested Records**

The Requesters request all records from January 1, 2012 to the present concerning the DOS's provision of security technical assistance to specific foreign governments. The International Narcotics Control Strategy Report drafted by the DOS Bureau of International Narcotics and Law Enforcement Affairs revealed specific instances of such technical assistance: to the Bahamas, with assistance to the Ministries of National Security, Legal Affairs, and Finance to "establish practices to address issues with corruption,"[1] and to Peru, with assistance to the Peruvian Customs "to modernize customs and immigration practices."[2]

Specifically, the Requesters request the following records[3]:

1. Records related to the provision of security technical assistance to the Bahamas, including, but not limited to, any guidance on draft legislation to address issues with corruption.

---

[1] Dep't of State, 1 International Narcotics Control Strategy Report 108 (Mar. 2018), https://www.state.gov/documents/organization/278759.pdf.

[2] *Id.* at 250.

[3] Records include, but are not limited to, briefings, reports, memoranda, legal opinions, policy statements, talking points, notes, tape recordings, electronic records (including email, whether through .gov email addresses or private third-party services such as Gmail), and any other materials.

2.     Records related to the provision of security technical assistance to Peru, including, but not limited to:

    a.   Any risk assessment regarding the provision of assistance for the Automated Targeting System-Global and the Biometrics Identification Transnational Migration Alert Program.

    b.   Any information regarding the training funded by the United States on cybercrimes and passenger risk analysis, including, but not limited to:

        i.   Training schedules, which include the start and end dates, the course titles, and the agency providing the training;

        ii.   The titles of all educational materials that were provided to the participants for the training; and

        iii. Course descriptions, which provide the information on the objectives and expected outcomes of each course.

We urge the DOS to process this request consistent with the Department of Justice's policy directing a presumption of disclosure under FOIA.[4]

**Request for a Public Interest Fee Waiver**

The Requesters request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[5]

First, the request concerns "identifiable operations or activities of the federal government."[6] The request seeks information regarding identifiable guidance, programs, or training provided by the DOS, including those mentioned in the DOS's public report. Specifically, the requested records will shed light on the role of the DOS officials in providing technical assistance on foreign legislation or law enforcement practices.

Second, disclosure of the requested records will be "meaningfully informative about government operations or activities" so as to be "likely to contribute to an increased public understanding of

---

[4] *See* Dep't of Justice Office of Info. Policy, *President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines: Creating a "New Era of Open Government"* (2009), https://www.justice.gov/oip/blog/foia-post-2009-creating-new-era-open-government.

[5] 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1)(i)-(ii).

[6] 6 C.F.R. § 5.11(k)(2)(i).

those operations or activities."[7] U.S. security assistance to foreign governments, especially for the purposes of facilitating the development of their surveillance capabilities, is a matter of great public interest and concern. The requested records will reveal substantial new information about U.S. security assistance, including what factors the DOS considered in conducting a risk assessment before providing security technical assistance to foreign governments. The Requesters believe that such information will bring greater transparency to the U.S. government's security assistance and any related implications on civil liberties.

The requested records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and significantly enhance "the public's understanding of the subject in question."[8] The Requesters have each regularly published the results of their FOIA requests on their respective websites.[9] Consistent with this practice, the Requesters also intend to disseminate any information obtained through this request to the public, contributing to the public's enhanced understanding of foreign security assistance provided by the U.S. government.

Finally, the Requesters do not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to government surveillance, is a critical and substantial component of PI's work.[10] PI does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting the protection of civil liberties and human rights.

MuckRock is a Massachusetts-based 501(c)(3) non-profit organization that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents. It provides a repository of hundreds of thousands of pages of original government

---

[7] *Id.* § 5.11(k)(2)(ii) (internal quotation marks omitted).

[8] *Id.* § 5.11(k)(2)(iii)-(iv).

[9] *See, e.g.*, Privacy International, A Freedom of Information Case Study: Challenging "Neither Confirm Nor Deny" (Aug. 7, 2018), https://privacyinternational.org/sites/default/files/2018-08/FOI-case-study-NCND.pdf; MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[10] *See, e.g.*, Privacy International, Privacy International's Work on Hacking, https://privacyinternational.org/feature/1692/privacy-internationals-work-hacking.

materials,[11] as well as original reporting and analysis,[12] particularly in the areas of government spending, surveillance, and public safety. MuckRock does not seek to commercially benefit from these activities. Rather, the dissemination of information to the public will be at no cost and for the purpose of making politics more transparent and democracies more informed.

**Request for News Media Fee Waiver**

In the alternative, the Requesters request a waiver of search and review fees on the ground that they are a "representative of the news media" and do not seek the requested records for commercial use.[13] Accordingly, fees associated with the processing of this request should be limited to reasonable duplication costs.

The Requesters "actively gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience."[14] PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[15] policy papers,[16] and frequent blog posts.[17] This information is made available to the public via PI's website. PI intends to use its editorial skills to turn any information obtained through this request into a report or blog post, freely distributed, to educate the public.

---

[11] *See* MuckRock, Requests (lasted accessed Mar. 28, 2019), https://www.muckrock.com/foi/list/.

[12] *See, e.g.*, Curtis Waltman, *Chicago Police Department Can't Use Blanket "Investigatory Techniques" Exemption to Deny Records Regarding Controversial Social Media Surveillance Technology*, MuckRock News (Apr. 13, 2018), https://www.muckrock.com/news/archives/2018/apr/13/cpd-babel-fish/.

[13] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[14] *Id.*; 6 C.F.R. § 5.11(b)(6).

[15] *See, e.g.*, Privacy International, Secret Global Surveillance Networks (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Secret%20Global%20Surveillance%20Networks%20report%20web%20%28200%29_0.pdf.

[16] *See, e.g.*, Privacy International, Policy Briefing – Intelligence Sharing Arrangements (Apr. 2018), https://privacyinternational.org/sites/default/files/2018-04/Privacy%20International%20Briefing%20-%20Intelligence%20Sharing%20FINAL.pdf.

[17] *See, e.g.*, Harmit Kambo, *Into the Unknown: Government Surveillance After Brexit*, Privacy International (Dec. 1, 2017), https://www.privacyinternational.org/node/1463; Alex Betschen, *Shining a Light on Federal Law Enforcement's Use of Computer Hacking Tools*, Privacy International (Sep. 20, 2018), https://www.privacyinternational.org/blog/2279/shining-light-federal-law-enforcements-use-computer-hacking-tools.

MuckRock is a collaborative news organization that provides advice for the public to submit effective FOIA requests. It then analyzes the primary released documents and publishes the resulting original investigative reporting[18] and analysis[19] by MuckRock staff and outside contributors. The documents and articles are freely available online to the public via MuckRock's website.

For the reasons above, the Requesters respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If the fees will not be waived, the Requesters agree to pay up to $100 for the processing of this request. If the estimated fees will exceed this limit, please contact us before you begin processing.

**Request for Records in Electronic Format**

The Requesters request that responsive electronic records be provided electronically in their native file format, if possible.[20] Alternatively, the Requesters request that the records be provided electronically in text-searchable PDF, in the best image quality in the DOS's possession, and in separate, Bates-stamped files. The Requesters further request that you provide an estimated date on which you will finish processing this request.[21]

***

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

---

[18] Shawn Musgrave, *After Public Records Request, Boston Police Suspends License Plate Scanner Surveillance Program*, MuckRock News, (Dec. 15, 2013), https://www.muckrock.com/news/archives/2013/dec/15/boston-police-close-alpr-program/; Dave Maass & Beryl Lipton, *Data Driven: Explore How Cops Are Collecting and Sharing Our Travel Patterns Using Automated License Plate Readers*, MuckRock News, (Nov. 15, 2018), https://www.muckrock.com/news/archives/2018/nov/15/alpr-what-we-learned/.

[19] *See, e.g.*, JPat Brown, *The FBI Feared That "Seven Days in May" Was Bad for America*, MuckRock News (Mar. 18, 2019), https://www.muckrock.com/news/archives/2019/mar/18/fbi-reagan-seven-days-in-may/ (as part of the FBI Files Project that sifts through the hundreds of thousands of pages of FBI archival material released).

[20] *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003))).

[21] *See id.* § 552(a)(6)(B).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us.

Yours,


Kendra Albert
Clinical Instructional Fellow
Cyberlaw Clinic, Harvard Law School

Submitted on behalf of:

Caroline Wilson Palow                    Michael Morisy
General Counsel                          Chief Executive
Privacy International                     MuckRock